UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND, WELFARE FUND, ANNUITY FUND, and APPRENTICESHIP, JOURNEYMAN RETRAINING, EDUCATIONAL AND INDUSTRY FUND, TRUSTEES OF THE NEW YORK CITY CARPENTERS RELIEF AND CHARITY FUND, and THE CARPENTER CONTRACTOR ALLIANCE OF METROPOLITAN NEW YORK,<br><br>Plaintiffs,<br><br>-against-<br><br>NEW YORK MASTCLIMBING LLC, DUNLOP ACCESS SYSTEMS LLC d/b/a DUNLOP MASTCLIMBERS, DUNLOP MASTCLIMBERS, LLC f/k/a DUNLOP WORK PLATFORMS, LLC, DUNLOP MASTCLIMBERS LTD., DUNLOP MASTCLIMBERS LLC,<br><br>Defendants. | No. 20 CV _____<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs, by and through their attorneys, Virginia & Ambinder, LLP, as and for their Complaint, respectfully allege as follows:

## NATURE OF THE ACTION

1. This is a civil action pursuant to sections 502(a)(3) and 515 of the Employee Retirement Income Security Act, as amended, 29 U.S.C. §§ 1132(a)(3), 1145 ("ERISA"), and section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 ("LMRA"), and other applicable law, to obtain relief related to delinquent contributions to employee benefit plans.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. §§ 185 and 1132(e)(1).

3. Venue is proper in this Court pursuant to 29 U.S.C. § 1132(e)(2) because the Funds (as defined below) are administered in this district.

## THE PARTIES

4.      Plaintiffs Trustees of the New York City District Council of Carpenters Pension, Welfare, and Annuity, Apprenticeship, Journeyman Retraining, Educational and Industry Funds (the "ERISA Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with ERISA.  The ERISA Funds are organized and operated in accordance with Section 302(c) of the LMRA, 29 U.S.C. § 186(c), and are employee benefit plans within the meaning of Section 3(3) of ERISA, 29 U.S.C. §1002(3).  The Trustees are fiduciaries of the ERISA Funds within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21).  The ERISA Funds maintain their principal place of business at 395 Hudson Street, New York, New York 10014.

5.      Plaintiffs Trustees of the New York City District Council of Carpenters Relief and Charity Fund (the "Charity Fund") are Trustees of a charitable organization established under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3).  The Charity Fund maintains its principal place of business at 395 Hudson Street, New York, New York 10014.

6.      Plaintiff The Carpenter Contractor Alliance of Metropolitan New York f/k/a New York City and Vicinity Carpenters Labor-Management Corporation (together, with the Charity Fund and the ERISA Funds, as the "Funds") is a New York not-for-profit corporation organized and operated in accordance with Section 302(c)(9) of the LMRA, 29 U.S.C. § 186(c)(9), that maintains its principal place of business at 245 5th Ave, New York, New York 10016.

7.      Defendant New York Mastclimbing Installations LLC ("New York Mastclimbing") is/was a New York corporation.  At all relevant times, New York Mastclimbing has been an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and an employer in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142.

New York Mastclimbing maintains a principal place of business at 807 Elton Avenue, Apt. C, Bronx, NY 10451.

8.      Dunlop Access Systems LLC d/b/a Dunlop Mastclimbers ("Dunlop Access") is a New Hampshire corporation, authorized to do business in the State of New York.  At all relevant times, Dunlop Access is and has been an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and an employer in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142.  Dunlop Access maintains a principal place of business at 1 Pine Road, Exeter, NH 03833.

9.      Dunlop Mast Climbers, LLC f/k/a Dunlop Work Platforms, LLC ("Dunlop 1") is and/or was a New Hampshire corporation.  At relevant times, Dunlop 1 was an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and an employer in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142.  Dunlop 1 maintained a principal place of business at 1 Pine Road, Exeter, NH 03833.

10.     Dunlop Mastclimbers Ltd. ("Dunlop 2") is and/or was a New York corporation.  At relevant times, Dunlop 2 was an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and an employer in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142.  Dunlop 2 maintains a principal place of business at 25-20 Borden Avenue, Long Island City, NY 11101.

11.     Dunlop Mastclimbers, LLC ("Dunlop 3") (together with Dunlop Access, Dunlop 1, Dunlop 2, and Dunlop 3 as "Dunlop Entities") is a Delaware corporation, authorized to conduct business in the State of New York.  At all relevant times, Dunlop 3 is and has been an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and an employer in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142.  Dunlop 3

maintains a principal place of business at 220 East 42nd Street, 29th Floor, New York, NY 10017 and at 1 Pine Road, Exeter, NH 03833.

## FACTUAL ALLEGATIONS

### *New York Mastclimbing's Collective Bargaining Agreement*

12. At relevant times, New York Mastclimbing was a signatory to, or otherwise bound by, a collective bargaining agreement (the " New York Mastclimbing CBA") with the New York City District Council Carpenters f/k/a District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America (the "Union").

13. The Union is a labor organization within the meaning of section 301 of the LMRA, 29 U.S.C. § 185, and represents employees in an industry affecting commerce as defined in section 502 of the LMRA, 29 U.S.C. § 142.

14. The New York Mastclimbing CBA required New York Mastclimbing, *inter alia*, to make specified hourly benefit contributions to the Funds in connection with all work performed in the trade and geographical jurisdiction of the Union ("Covered Work").

15. Additionally, New York Mastclimbing was required to furnish its book and payroll records when requested by the Funds for the purpose of conducting an audit to ensure compliance with required benefit fund contributions under the terms of the New York Mastclimbing CBA.

16. Pursuant to the New York Mastclimbing CBA and the documents and instruments governing the Funds, an employer is liable for all delinquent contributions, plus compound interest thereon at the rate of the prime rate plus 2%, liquidated damages equal to 20% of the delinquent contributions, audit costs, and all reasonable attorneys' fees and costs incurred by the Funds in relation to this action.

17. Pursuant to the New York Mastclimbing CBA and the Funds' governing documents, if an employer fails to timely remit benefit contributions, the Funds may assess late payment interest against the employer from the date of the delinquency through the date of payment.

18. Pursuant to the New York Mastclimbing CBA, the Funds conducted an audit of New York Mastclimbing covering the period of March 28, 2014 through September 24, 2016 (the "Audit"), which contains a principal deficiency of $367,899.93.

19. New York Mastclimbing has failed to pay any of the delinquent contributions identified in the Audit or any of the damages to which the Funds are entitled in connection with such a delinquency, including interest, liquidated damages, audit costs, and attorneys' fees and costs.

## *Dunlop's Collective Bargaining Agreement*

20. At relevant times, Dunlop 1 and Dunlop 2 were signatories to, or otherwise bound by, a collective bargaining agreement with the Union.

21. Specifically, Dunlop 1 entered into an Independent Building Construction Agreement with the Union in March 2004.

22. In 2006, Dunlop 2 entered into an Interim Compliance Agreement wherein it acknowledged the existence of an agreement with the Union and agreed to be bound to the successor agreements negotiated between the Union and various employer associations. Dunlop 2 acknowledged that the terms of any new agreement would be retroactive to July 1, 2006.

23. The Independent Building Construction Agreement and Interim Compliance Agreement (collectively, "Dunlop CBAs," and together with the New York Mastclimbing CBA, the "CBAs") required Dunlop 1 and Dunlop 2 (collectively "Signatory Dunlop"), *inter alia*, to

make specified hourly benefit contributions to the Funds in connection with all Covered Work performed.

24. Additionally, Signatory Dunlop was required to furnish its book and payroll records when requested by the Funds for the purpose of conducting an audit to ensure compliance with required benefit fund contributions under the terms of the Dunlop CBAs.

25. Under the Dunlop CBAs and the documents and instruments governing the Funds, which are incorporated by reference into the Dunlop CBAs, if Signatory Dunlop refused to furnish the Funds with its books and records for the purpose of conducting an audit, then the Funds are entitled to issue an estimated audit of Signatory Dunlop based on its previously reported data, the findings of which are presumptive evidence of a delinquency under the terms of the documents and instruments governing the Funds.

26. Pursuant to the Dunlop CBAs and the documents and instruments governing the Funds, an employer is liable for all delinquent contributions, plus compound interest thereon at the prime rate plus 2%, liquidated damages equal to 20% of the delinquent contributions, audit costs, and all reasonable attorneys' fees and costs incurred by the Funds in relation to this action.

27. Pursuant to the Dunlop CBAs and the Funds' governing documents, if an employer fails to timely remit benefit contributions, the Funds may assess late payment interest against the employer from the date of the delinquency through the time of payment.

### *New York Mastclimbing and the Dunlop Entities are Alter Egos, Single Employers and/or Successor Entities*

28. At all relevant times, Defendants New York Mastclimbing and the Dunlop Entities operated as a single, integrated employer, with interrelation of operations, common management, centralized control of labor relations, common ownership, and common facilities and equipment.

29. At all relevant times, the Dunlop Entities were and are alter egos/successors of New York Mastclimbing, and vice versa, as they have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership.

30. Defendants New York Mastclimbing and the Dunlop Entities have at relevant times shared a common officer: Julian Dunlop.

31. Defendants New York Mastclimbing and the Dunlop Entities have at relevant times shared employees including, but not limited to: Awilda Acosta, Patrick Casell, Joseph F. Cianciolo, Deborah A. Fernandez, Zbigniew Lauk, Thomas G. Reagan, Andrew Robinson, Michael G. Robinson, and Julian Dunlop.

32. New York Mastclimbing and the Dunlop Entities have shared common office space and operations at locations in New York and New Hampshire, including, but not limited to: 807 Elton Avenue, Suite C, Bronx, New York, 10451, 325 West 38th Ste. 1104, New York, New York 10018; and 1 Pine Road, Exeter, New Hampshire, 03833.

33. Upon information and belief, New York Mastclimbing and the Dunlop Entities have at relevant times shared a telephone number.

34. New York Mastclimbing and the Dunlop Entities performed work on the same projects and/or share the same customers.

35. For example, New York Mastclimbing worked on a project identified as P.S. 183 project, located at 419 East 66th Street, New York, New York, 10065 (the "P.S. 183 Project").

36. Dunlop Access and Dunlop 3 also performed Covered Work on the P.S. 183 Project.

37. In addition, the Dunlop Entities have at all relevant times used the same website without any distinction between them - www.dunlopmastclimbers.com.

38. The Dunlop website indicates that the Dunlop Entities have performed the majority of their jobs in the New York City area.

39. Defendants have the same business purpose: erection and installation of exterior façade mast climbers, which is Covered Work.

40. New York Mastclimbing and the Dunlop Entities have, from 2016 through April 2019, shared a workers' compensation policy.

41. Upon information and belief, Defendants New York Mastclimbing and the Dunlop Entities have failed to follow ordinary corporate formalities or keep separate records, and there has never been an arm's length relationship between or among them.

42. The Dunlop Entities, through Julian Dunlop, had prior knowledge of New York Mastclimbing's obligations to Plaintiffs.

43. Upon information and belief, Defendants used the Dunlop Entities and New York Mastclimbing in order to avoid their collective obligations to the Funds under the CBAs. For example, as revealed by the Audit, employees performing Covered Work for the Defendants were listed on Dunlop Access's payroll records and taxes rather than on New York Mastclimbing's.

44. As alter egos, successors, and/or single employers with each other, New York Mastclimbing and the Dunlop Entities are subject to the CBAs' terms and each is liable for each other's unpaid contributions and obligations to the Funds.

**PLAINTIFFS' FIRST CLAIM FOR RELIEF AGAINST NEW YORK MASTCLIMBING**
**(Liability for Delinquent Contributions/Violation of the CBA)**

45. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

46. Section 515 of ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a

collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

47. Section 301 of the LMRA authorizes Plaintiffs, as third-party beneficiaries to the New York Mastclimbing CBA, to file a federal lawsuit regarding an employer's violation of the New York Mastclimbing CBA.

48. At relevant times, New York Mastclimbing was a party to or otherwise bound by the New York Mastclimbing CBA.

49. The New York Mastclimbing CBA and Plaintiffs' governing documents required New York Mastclimbing to make specified hourly contributions to Plaintiffs in connection with all work performed within the trade and geographical jurisdiction of the New York Mastclimbing CBA and to submit to and comply with periodic payroll audits when requested by Plaintiffs.

50. The Audit revealed that New York Mastclimbing failed to make all required contributions to the Funds in connection with Covered Work it performed during the period March 28, 2014 through September 24, 2016.

51. New York Mastclimbing violated the New York Mastclimbing CBA when it failed to remit contributions for all work it performed within the trade and geographical jurisdiction of the New York Mastclimbing CBA as revealed by the Audit.

52. Pursuant to sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, section 301 of the LMRA, 29 U.S.C. § 185, the New York Mastclimbing CBA, and the documents and instruments governing the Funds, Plaintiffs are entitled to an order finding that New York Mastclimbing is liable for delinquent contributions identified in the Audit in the amount of $367,899.93, plus interest, liquidated damages, audit costs and attorneys' fees, plus any additional

delinquent benefit contributions identified through the present during the course of this litigation, with the corresponding interest, liquidated damages, audit costs, and attorneys' fees and costs.

## PLAINTIFFS' SECOND CLAIM FOR RELIEF AGAINST NEW YORK MASTCLIMBING AND THE DUNLOP ENTITIES
(**Alter Ego/Successor/Single Employer Liability under the CBAs**)

53. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

54. Section 515 of ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

55. Section 301 of the LMRA authorizes the Funds, as third-party beneficiaries to the CBAs, to file a federal lawsuit regarding an employer's violation of that respective CBAs.

56. At relevant times, New York Mastclimbing and Signatory Dunlop were parties to or otherwise bound by the CBAs.

57. The CBAs and the documents and instruments governing Plaintiffs required New York Mastclimbing and Signatory Dunlop to make specified hourly contributions to Plaintiffs in connection with all work performed within the trade and geographical jurisdiction of the CBAs and to submit to and comply with periodic payroll audits when requested by Plaintiffs.

58. At relevant times, New York Mastclimbing and the Dunlop Entities were alter egos, successors, and/or single employers of each other and had substantially identical management, business purpose, operations, equipment, customers, supervision, and ownership and interrelation of operations, centralized control of labor functions, and common office facilities.

59. By virtue of their status as alter egos/successors/single employers, New York Mastclimbing and the Dunlop Entities are and, at all relevant times, have been bound by the CBAs and Plaintiffs' trust documents incorporated therein.  Accordingly, Defendants New York Mastclimbing and the Dunlop Entities are jointly and severally liable for each other's obligations under the CBAs and under Plaintiffs' trust documents.

60. New York Mastclimbing and the Dunlop Entities violated the CBAs when they failed to remit all contributions for work performed within the trade and geographical jurisdiction of the CBAs.

61. Pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, Section 301 of the LMRA, 29 U.S.C. § 185, the CBAs, and the documents and instruments governing the Funds, Plaintiffs are entitled to an order: (1) finding that the Dunlop Entities are the alter egos, successors, and/or a single employer with New York Mastclimbing and that the Dunlop Entities and New York Mastclimbing constitute a single integrated enterprise; (2) directing the Dunlop Entities and New York Mastclimbing to submit to an audit of their books and records to determine the extent of their delinquent contributions for the periods July 23, 2014 to the present and September 25, 2016 to the present, respectively; and (3) finding that the Dunlop Entities and New York Mastclimbing are jointly and severally liable for any delinquent contributions and associated liquidated damages, interest, fees, and costs, revealed by the audit of the Dunlop Entities, by the Audit of New York Mastclimbing, and any subsequent audit of New York Mastclimbing, or otherwise found to be due and owing by New York Mastclimbing and/or the Dunlop Entities during the course of this litigation.

**WHEREFORE,** Plaintiffs respectfully request that this Court issue an order:

(1) On Plaintiffs' First Claim for Relief, (i) awarding judgment in favor of Plaintiffs and against Defendant New York Mastclimbing for the delinquent benefit contributions identified in the Audit of $367,899.93, plus interest as prescribed in the New York Mastclimbing CBA, liquidated damages in the amount of twenty percent (20%) of the amount of delinquent contributions owing, reasonable attorneys' fees, audit fees, and other costs incurred during the Audit and collections procedures;

(2) On Plaintiffs' Second Claim for Relief, finding that the Dunlop Entities are alter egos, successors, and/or single employer with New York Mastclimbing and that the Dunlop Entities and New York Mastclimbing constitute a single integrated enterprise; (2) directing the Dunlop Entities and New York Mastclimbing to submit to an audit of their books and records for the periods July 23, 2014 to the present and September 25, 2016 to the present, in order to determine the extent of their delinquent contributions; and (3) finding that the Dunlop Entities and New York Mastclimbing are jointly and severally liable for any delinquent contributions and associated liquidated damages, interest, fees, and costs, revealed by the audit of the Dunlop Entities, by the audits of New York Mastclimbing, or otherwise found to be due and owing by New York Mastclimbing and/or the Dunlop Entities during the course of this litigation; and

(3) Award Plaintiffs such other and further relief as the Court may deem just and proper.

Dated: New York, New York  
July 28, 2020

Respectfully submitted,

**VIRGINIA & AMBINDER, LLP**

By: _____/s/_____
Nicole Marimon, Esq.
Marlie Blaise, Esq.
40 Broad Street, 7th Floor
New York, New York 10004
nmarimon@vandallp.com
(212) 943-9080

*Attorneys for Plaintiffs*